EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (Cal. Bar No. 143755)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6975
    Facsimile:  (213) 894-6269
    E-mail:      steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-512-SJO |
|         Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>NANCY BRIONES</u> |
|             v. | |
| NANCY BRIONES, R.N., | |
|         Defendant. | |

     1.   This constitutes the plea agreement between Nancy Briones ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

     2.   Defendant agrees to:

         a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count nine of the

1    indictment in <u>United States v. Priscilla Villabroza</u>, CR 14-512-SJO,

2    which count charges defendant with health care fraud, in violation of

3    Title 18, United States Code, Section 1347.

4              b.   Not contest facts agreed to in this agreement.

5              c.   Abide by all agreements regarding sentencing contained

6    in this agreement.

7              d.   Appear for all court appearances, surrender as ordered

8    for service of sentence, obey all conditions of any bond, and obey

9    any other ongoing court order in this matter.

10             e.   Not commit any crime; however, offenses that would be

11   excluded for sentencing purposes under United States Sentencing

12   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

13   within the scope of this agreement.

14             f.   Be truthful at all times with Pretrial Services, the

15   United States Probation Office, and the Court.

16             g.   Pay the applicable special assessments at or before

17   the time of sentencing unless defendant lacks the ability to pay and

18   prior to sentencing submits a completed financial statement on a form

19   to be provided by the USAO.

20             h.   Not seek the discharge of any restitution obligation,

21   in whole or in part, in any present or future bankruptcy proceeding.

22      3.   Defendant further agrees to cooperate fully with the USAO,

23   the Federal Bureau of Investigation, the United States Department of

24   Health and Human Services, Office of Inspector General, the Internal

25   Revenue Service—Criminal Investigations, and, as directed by the

26   USAO, any other federal, state, local, or foreign prosecuting,

27   enforcement, administrative, or regulatory authority.  This

28   cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated January 7, 2015 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

6.   The USAO further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable

guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

### DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

7.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

       d.  At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

       e.  The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSES</u>

8.  Defendant understands that for defendant to be guilty of the crime charged in count nine, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, the following must be true:

(1) Defendant knowingly and willfully participated in a scheme or plan to defraud a health care benefit program, or a scheme or plan for obtaining money or property from a health care benefit program by means of false or fraudulent pretenses, representations, or promises;

(2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, the health care benefit program to part with money or property;

(3) Defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

(4) The scheme involved the delivery of or payment for health care benefits, items, or services.

The word "willfully" means that defendant committed the act voluntarily and purposely, and with knowledge that her conduct was, in a general sense, unlawful.  That is, defendant must have acted with a bad purpose to disobey or disregard the law.  The government need not prove that the defendant was aware of the specific provision of the law that she is charged with violating or any other specific provision.

The term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. For purposes of this case, it includes the Medicare and Medi-Cal programs.

<u>PENALTIES AND RESTITUTION</u>

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is: 10 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for

7

the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in an amount greater than the amount alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim for any losses suffered by that victim as a result of: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any dismissed counts pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution owed to the Medicare and Medi-Cal programs is approximately $3,619,437.74 and $41,648.03 respectively, based upon the claims California Hospice submitted to Medicare and Medi-Cal for patients for which defendant conducted the nursing assessments and were admitted to California Hospice, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from federal health care benefit programs for a minimum of five years, revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

14.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree

1    that this statement of facts is sufficient to support a plea of

2    guilty to the charge described in this agreement and to establish the

3    Sentencing Guidelines factors set forth in paragraph 17 below but is

4    not meant to be a complete recitation of all facts relevant to the

5    underlying criminal conduct or all facts known to either party that

6    relate to that conduct.

7        <u>Background</u>

8        At all times relevant to this plea agreement, the Medicare and

9    Medi-Cal programs were health care benefit programs as defined by 18

10   U.S.C. § 24(b).  The term "health care benefit program" means any

11   public or private plan or contract, affecting commerce, under which

12   any medical benefit, item, or service is provided to any individual,

13   and includes any individual or entity who is providing a medical

14   benefit, item, or service for which payment may be made under the

15   plan or contract.  Individuals receiving Medicare or Medi-Cal

16   benefits were known as beneficiaries.

17       To qualify for reimbursement for hospice services, Medicare and

18   Medi-Cal required a physician to certify that a beneficiary was

19   terminally ill.  Medicare and Medi-Cal considered a beneficiary to be

20   "terminally ill" if the beneficiary's life expectancy was six months

21   or less if the illness ran its normal course.  Hospice services

22   reimbursed by Medicare and Medi-Cal were palliative in nature and

23   included, but were not limited to, medications to manage pain

24   symptoms, necessary medical equipment, and bereavement services to

25   surviving family members.

26       Medicare covered hospice services for those beneficiaries who

27   were eligible for Medicare Part A (hospital-related services).  When

28   a Medicare beneficiary elected hospice coverage, the beneficiary

10

1    waived all rights to Medicare Part B (covering outpatient physician

2    services and procedures) coverage of services to treat or reverse the

3    beneficiary's terminal illness while the beneficiary was on hospice.

4         California Hospice was a Medicare provider.  Defendant was

5    employed by California Hospice as a registered from in or about

6    February 2010 to in or about February 2013.  Co-schemer Sharon Patrow

7    ("Patrow") was an owner of California Hospice.  Co-schemer Dr. Sri

8    Wijegoonaratna ("Wijegoonaratna") was a physician at California

9    Hospice.

10        The Scheme to Defraud

11        Between in or about February 2010 and in or about July 2013,

12   defendant knowingly, willfully, and with intent to defraud, executed

13   and attempted to execute a scheme and artifice: (a) to defraud health

14   care benefit programs, namely, Medicare and Medi-Cal, as to material

15   matters in connection with the delivery of and payment for health

16   care benefits, items, and services; and (b) to obtain money from

17   Medicare and Medi-Cal by means of material false and fraudulent

18   pretenses and representations and the concealment of material facts

19   in connection with the delivery of and payment for health care

20   benefits, items, and services.

21        The fraudulent scheme operated, in substance, in the following

22   manner:

23        Defendant was paid money by co-schemer Patrow to conduct initial

24   assessments and recruit Medicare and Medi-Cal beneficiaries to sign

25   up for hospice care provided by California Hospice.  Defendant agreed

26   to conduct initial assessments knowing that the beneficiaries were

27   not terminally ill and did not qualify for hospice care.  As

28   defendant then well knew, paying for recruiting patients was illegal.

1    In addition, as defendant then well knew, California Hospice received

2    few, if any, referrals from the primary care physicians of the

3    beneficiaries.  Instead, co-schemer Patrow paid recruiters or

4    marketers to refer beneficiaries in order to obtain admissions.

5         A physician affiliated with California Hospice would falsely

6    certify that the beneficiary was terminally ill and the beneficiary

7    would be admitted to hospice.  Once the beneficiary was admitted to

8    hospice, California Hospice billed Medicare or Medi-Cal for

9    purportedly providing unnecessary hospice-related services.

10            a.   Defendant's Falsification of Initial Assessment

11        Defendant conducted the initial assessment of the beneficiaries.

12   During these assessments, defendant observed that the beneficiaries

13   recruited to California Hospice were not terminally ill, and did not

14   need or qualify for hospice services.  However, acting with intent to

15   defraud Medicare and Medi-Cal, defendant willfully created false and

16   fraudulent medical records to make it appear that the beneficiaries

17   were terminally ill.  Specifically, in an effort to deceive Medicare

18   and Medi-Cal about the beneficiary's true medical condition,

19   defendant falsified medical information on the beneficiary's

20   Functional Assessment Scale and Nutritional Screening Questionnaire

21   relating to, among other things, the beneficiary's speech ability,

22   ambulatory ability, weight loss, and decreased appetite to make it

23   appear that the beneficiary was terminally ill in order to allow

24   California Hospice to admit the beneficiary and bill Medicare and

25   Medi-Cal, whereas, as defendant then well knew, the beneficiaries

26   were not terminally ill.  Defendant told co-schemers Patrow and Dr.

27   Wijegoonaratna during Interdisciplinary Team meetings at California

28   Hospice that beneficiaries did not want hospice care and were not

                                    12

declining in health.  Defendant's decision to assess the beneficiary's medical condition in declining health was dictated by her intent to get beneficiaries admitted for hospice care, knowing that if a beneficiary was not admitted, defendant would receive no, or less, compensation than if the beneficiary was admitted, and that defendant would not receive further referrals and compensation for nursing assignments.

On or about January 30, 2012, in furtherance of the scheme to defraud Medicare, defendant caused the submission of claim number 21203000050302 for $5,753.40 to Medicare for the provision of hospice services to beneficiary M.H..  In fact, and as defendant then well new, this claim was false and fraudulent because beneficiary M.H. was not terminally ill.  Specifically, defendant created false medical records for the assessment of M.H. falsely stating that M.H. was losing weight and could not speak.  Medicare paid this claim. Defendant and the USAO agree that the offense in count nine to which defendant is pleading guilty involved a loss to the victim, Medicare, of $4,803.27.

b.   Defendant's Payments for Recruiting a Beneficiary

In or about March 2011, defendant conducted an assessment of beneficiary J.R.  At the time, beneficiary J.R. was on the United Network of Organ Sharing liver transplant list at the University of California, Los Angeles ("UCLA").  J.R. was admitted to California Hospice.

Defendant knew that J.R. did not want to be removed from the transplant list and J.R. did not want to remain on hospice care if that meant J.R. would be removed from the transplant list.

Co-schemer Patrow paid defendant $400 each month for as long as J.R. remained on hospice, resulting in total payments to defendant of approximately at least $974 for recruiting J.R. into hospice care at California Hospice from in about April 2011 through June 2011.

Relevant Conduct Loss

For purposes of sentencing, the loss based on relevant conduct was approximately $3,661,085.77, which is the total amount of the fraudulent claims defendant caused to be submitted to Medicare and Medi-Cal for medically unnecessary hospice-related services purportedly provided by California Hospice based upon the claims California Hospice submitted to Medicare and Medi-Cal as to beneficiaries, who, as defendant then well knew, were not terminally ill.

SENTENCING FACTORS

15. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

16. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

14

Count 9 — Health Care Fraud

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount of $3.6 Million | +18 | [U.S.S.G.§ 2B1.1(b)(1)(J)] |
| Fraud on a Government Health Care Program More Than $1 Million | +2 | [U.S.S.G. § 2B1.1(b)(7)] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)] |
| **Total Offense Level:** | **23** | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 5(d) are met.  Subject to paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

17.  On April 19, 2015, the Sentencing Commission approved amendments to the Sentencing Guidelines that will go into effect on November 1, 2015, unless modified or disapproved by Act of Congress. If defendant's sentencing were governed by those amendments, defendant and the USAO agree the following applicable Sentencing Guidelines factors would apply:

Count 9 — Health Care Fraud

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount of $3.6 Million | +18 | [U.S.S.G.§ 2B1.1(b)(1)(J)] |
| Fraud on a Government Health Care Program More Than $1 Million | +2 | [U.S.S.G. § 2B1.1(b)(7)] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)] |
| **Total Offense Level:** | **23** | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 5(d) are met.  Subject to paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to

17

1  appeal defendant's convictions on the offenses to which defendant is

2  pleading guilty.

3                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4       22.  Defendant agrees that, provided the Court imposes a total

5  term of imprisonment on all counts of conviction of no more than 71

6  months, defendant gives up the right to appeal all of the following:

7  (a) the procedures and calculations used to determine and impose any

8  portion of the sentence; (b) the term of imprisonment imposed by the

9  Court; (c) the fine imposed by the court, provided it is within the

10 statutory maximum; (d) the amount and terms of any restitution order,

11 provided it requires payment of no more than $3,661,085.77 (e) the

12 term of probation or supervised release imposed by the Court,

13 provided it is within the statutory maximum; and (f) any of the

14 following conditions of probation or supervised release imposed by

15 the Court: the conditions set forth in General Orders 318, 01-05,

16 and/or 05-02 of this Court; and the drug testing conditions mandated

17 by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

18      23.  The USAO agrees that, provided (a) all portions of the

19 sentence are at or below the statutory maximum specified above and

20 (b) the Court imposes a term of imprisonment of no less than 57

21 months, the USAO gives up its right to appeal any portion of the

22 sentence, with the exception that the USAO reserves the right to

23 appeal the amount of restitution ordered if that amount is less than

24 $3,661,085.77.

25              RESULT OF WITHDRAWAL OF GUILTY PLEA

26      24.  Defendant agrees that if, after entering guilty pleas

27 pursuant to this agreement, defendant seeks to withdraw and succeeds

28 in withdrawing defendant's guilty pleas on any basis other than a

                                 18

claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

25.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

26.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

27.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any

20

agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

28.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement,

then: Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_Steven M. Arkow_                    August 27, 2015
STEVEN M. ARKOW                      Date
Assistant United States Attorney

_Nancy Briones_                      08.26.15
NANCY BRIONES                        Date
Defendant

                                     08-26-15
_____             Date
PAUL AQUINO
Attorney for Defendant
Nancy Briones

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

24

1   contained in this agreement. No one has threatened or forced me in

2   any way to enter into this agreement. I am satisfied with the

3   representation of my attorney in this matter, and I am pleading

4   guilty because I am guilty of the charges and wish to take advantage

5   of the promises set forth in this agreement, and not for any other

6   reason.

7   _Nancy Briones_                          _08·26·15_

8   NANCY BRIONES                             Date
    Defendant

9

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am Nancy Briones's attorney. I have carefully and thoroughly

12  discussed every part of this agreement with my client. Further, I

13  have fully advised my client of his rights, of possible pretrial

14  motions that might be filed, of possible defenses that might be

15  asserted either prior to or at trial, of the sentencing factors set

16  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge: no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is an informed and voluntary one; and the factual basis set

23  forth in this agreement is sufficient to support my client's entry of

24  guilty pleas pursuant to this agreement.

25                                           _08/26/15_

26  PAUL AQUINO                              Date
    Attorney for Defendant

27  Nancy Briones

28

                          25